UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ronald A. Collins,                               Civil No. 07-1565 (RHK/FLN)

      Petitioner,

v.                                        **REPORT AND RECOMMENDATION**

Timothy Wengler, Warden,

      Respondent.

_____

Pro Se, Petitioner.
Mark Nathan Lystig, Assistant Ramsey County Attorney, for Respondent.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [#1]. Respondent filed a response in opposition to Petitioner's petition [#6]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that the petition be dismissed with prejudice.

**I. BACKGROUND**

Petitioner Ronald Collins is currently incarcerated at the Prairie Correctional Facility in Appleton, Minnesota. Petitioner is serving a 110 month sentence that was imposed by the Ramsey County District Court after a jury found Petitioner guilty of assault in the first degree. Petitioner appealed his conviction to the Minnesota Court of Appeals, arguing that (1) the prosecution's dismissal of an African-American juror was racially motivated and violated *Batson v. Kentucky*, 476 U.S. 79 (1986); (2) the district court erred by ruling that Petitioner's prior conviction for fifth-degree possession of a controlled substance was admissible at trial for impeachment purposes; and (3) the

evidence is insufficient to support the jury's determination that Petitioner committed the assault for which he was convicted.[1]  *State v. Collins*, 2006 WL 3409167 (Minn.App.2006), *rev. denied*, Feb. 20, 2007.

In its decision on this matter, the Minnesota Court of Appeals held that the district court did not commit clear error when it determined that the prosecutor's reason for striking the African-American juror from the venire was not racially motivated.  *Id*. at *4.  The Court held that the district court did not abuse its discretion by allowing the state to use Petitioner's prior conviction of fifth-degree possession for impeachment purposes.  The Court further held that, viewed in the light most favorable to the jury's verdict, the evidence was sufficient to support Petitioner's conviction for first-degree assault.  *Id*. at *4-7.

Petitioner thereafter filed a petition for review with the Minnesota Supreme Court.  Petitioner noted that there were two legal issues in his appeal to the Minnesota Supreme Court: (1) that the prosecution's dismissal of an African-American juror was racially motivated and violated *Batson v. Kentucky*, 476 U.S. 79 (1986); and (2) that the district court erred by ruling that Petitioner's prior conviction for fifth-degree possession of a controlled substance was admissible at trial for impeachment purposes.  While Petitioner noted that there were two legal issues in this case, Petitioner only presented argument in his petition for review to the Minnesota Supreme Court concerning the *Batson* issue.  Petitioner attached a copy of the briefs presented to the Minnesota Court of Appeals, including Petitioner's *pro se* supplemental brief, with the petition for review to

---

[1] Petitioner filed a *pro se* Supplemental Brief with the Minnesota Court of Appeals, arguing that the evidence presented at trial was insufficient to support his conviction.  The other two arguments presented to the Court of Appeals were presented on behalf of Petitioner by the office of the Minnesota State Public Defender.

the Minnesota Supreme Court. The Minnesota Supreme Court summarily denied review on February 20, 2007.

Petitioner filed the present petition on March 19, 2007. (Docket Number 1.) Petitioner argues that the trial court erred when it (1) allowed the prosecutor to strike the only African-American juror; (2) admitted evidence of Petitioner's fifth-degree possession conviction for impeachment purposes; (3) convicted Petitioner when the evidence was insufficient to support such a conviction; and (4) violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights. (Docket Number 1.) Respondent argues that the petition should be dismissed because the state court decision regarding the *Batson* issue was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Furthermore, Respondent argues that the petition should be dismissed because it was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Respondent further argues that Petitioner is not entitled to relief because there was no federal constitutional dimension to the state court ruling that Petitioner could be impeached with evidence that he had been convicted of fifth-degree possession. Respondent argues that Petitioner is not entitled to relief because the Minnesota Court of Appeals' decision that the evidence presented at trial was sufficient to support the conviction was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, and it was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Finally, Respondent argues that, although Petitioner has alleged other constitutional violations in his petition, Petitioner did not argue or cite to any relevant legal authority in support of his other constitutional claims in the proceedings before the state courts; therefore, Petitioner is not entitled to habeas corpus relief on these claims.

This Court recommends that Petitioner's petition for a writ of habeas corpus be denied on the grounds that his Petition asserts one claim that fails on the merits and three procedurally defaulted claims. The Court will consider each of Petitioner's claims in turn.

## II. DISCUSSION

28 U.S.C. § 2254(a) states that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus claims raised by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court held that:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.' Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal

habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 412-13 (quoting 28 U.S.C. § 2254 (d)(1)). The Court further explained the "unreasonable application" clause:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. 529 U.S. at 409, 411.

A writ of habeas corpus may also be available where the state courts' resolution of a case is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief may be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court decision, however, a "federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

A federal district court is not allowed to conduct its own *de novo* review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, the petitioner must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*.

Federal habeas relief is only available to a person in custody in violation of the Constitution,

laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") As a threshold matter, a petitioner must present a federal question in his petition for relief.

> **A.  It Was Not Unreasonable for the Trial Court to Credit the Prosecutor's Race-Neutral Explanations for Striking the Only African-American Juror on the Venire.**

In *Batson v. Kentucky*, 476 U.S. 79, 85-86 (1986), the United States Supreme Court held that a criminal defendant has "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria. . . . [and that] [t]he Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race." When a criminal defendant alleges that the prosecution has engaged in discriminatory selection of the venire, by using a peremptory challenge to exclude a person from the jury based on race, the defendant has the burden to "make out a prima facie case of purposeful discrimination." *Id*. at 96.

> To establish such a case, the defendant must first show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. . . . Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause.

*Id*. at 96-97.

As the United States Supreme Court later noted, "[a]lthough the prosecutor must present a

comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 126 S.Ct. 969, 973-74 (2006) (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (*per curiam*)). The Supreme Court further noted that "[u]nder AEDPA, however, a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Collins*, 126 S.Ct. at 974 (quoting 28 U.S.C. § 2254 (d)(2)). Therefore, the Supreme Court concluded that "a federal habeas court can only grant [Petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge. State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' " *Id*. (quoting 28 U.S.C. § 2254(e)(1)).

Therefore, this Court may only grant the present petition "if it was unreasonable for the trial court to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Id*. In the present case both the district court and the Minnesota Court of Appeals determined that *Batson v. Kentucky* was the appropriate precedent that controlled in this case. The trial court dutifully followed that precedent. Once Petitioner established a prima facie case of purposeful discrimination by showing that an African-American (hereinafter referred to as S.M.) had been excluded from the venire and that the circumstances of the case raised an inference that the motive for the exclusion was race, the trial court shifted the burden to the prosecutor to provide a race-neutral explanation for the strike.

At the beginning of jury selection in Petitioner's case, the trial court asked prospective jurors several general questions about their qualifications to serve on a jury. S.M. did not have any

responses to these questions. The trial court then asked the prospective jurors to tell the court whether they were "married, single, children. What you do for a living. And then also tell us what you like to do in your spare time." (Exhibit 3 (hereinafter "Tr.") at 28.) S.M. responded "Got two kids, two and three. And originally from Mississippi. Work at Interspect Solution. Material handler. I have been there two years. Spare time I like to fix on cars." (Tr. 37.) The district court judge asked S.M. what brought him to Minnesota from Mississippi, and S.M. replied "The truth, it got boring." (Tr. 37.) The district court judge asked S.M. if his parents still lived in Mississippi, and S.M. replied "[m]y mother passed when I was like 19. My father stays in St. Louis." (Tr. 37.)

After the district court judge questioned the prospective jurors, Petitioner's attorney was permitted to question the jurors; however, Petitioner's attorney did not question S.M. After Petitioner's attorney questioned the venire the prosecutor was permitted an opportunity to question the venire. The prosecutor asked the venire the following question:

> I just want to know how people decide on conflicts in what you hear. Like in a situation where people are giving you different versions of what happened. How would you go about deciding whom to believe. Maybe kids. Maybe as a teacher. Maybe students. As a student, maybe other students. It may be colleagues or anything like that. I'm going to ask everyone to go through their experience and tell me just briefly on how they go about deciding whom to believe.

(Tr. 69-70.) S.M. responded

> I listen to both sides of the story to tell the truth. I couldn't make a decision without the evidence. To me he said, she said doesn't really tell you too much without the evidence. I'll make my decision only after the evidence.

(Tr. 79.) The prosecutor and S.M. then had the following exchange:

> Prosecutor: Let me ask you this. When you talk about evidence, what are you looking for?

| | |
|---|---|
| S.M.: | Looking for anything that, evidence that either makes the defendant seem bad or make the other person, you know, if they don't have the right evidence it will be hard for me to make a decision. This person might say anything, this person might say anything. I'm not going to say I'm going to put it into my gut. I'm not going to put nobody's life in my gut, to tell you the truth. I'll rely on the evidence. |
| Prosecutor: | And if in your mind, if you don't think that there was enough evidence, it's the state that presents the case, if I haven't fulfilled my burden, would you go against your jurors if they felt another way? |
| S.M.: | If I didn't think there was enough evidence, yes, I would. |
| Prosecutor: | And you're comfortable in standing firm? |
| S.M.: | Yeah |

(Tr. 79-80.) The prosecutor exercised a peremptory challenge to strike S.M., the only African-American juror on the venire.

Petitioner's counsel challenged the peremptory strike of S.M., and the trial court concluded that Petitioner had presented a prima facie showing that the exercise of the peremptory challenge was based on race. The trial court then asked the prosecutor to provide a reason for the peremptory challenge. The following exchange occurred between the prosecutor and the district court judge:

| | |
|---|---|
| Prosecutor: | [S.M.] first of all, was the only person, or one of few people that did not respond to anything when His Honor was asking questions. When asked specifically to give a little background, he did provide some information. When I asked him when I was asking everybody questions as far as how they resolve conflicts, how they go about deciding whom to believe if they hear two different stories [S.M.] said that he would have a hard time with he said she said. While there were other people that also said that, [S.M.] did not give a response that I thought was adequate when he said I need evidence, evidence. I specifically asked him what evidence were you looking for? And he just did not respond. And that was the way while other people said, well, I would look for this and I would also look for this, I would add this and everything else, [S.M.] did not answer that question. |

> Court: There were a number of panel members that basically responded the same way. They said if it was a he said she said situation that they would look at the evidence. And as far as whether or not he responded beyond that point or responded to any of my questions, if none of the questions I asked were relevant to him, then it's not his fault that he didn't respond. It's just none of my questions triggered a response. And the same thing as far as his reasons, or the process of analysis if he didn't give additional information about what he would want as far as evidence, that's not necessarily his fault. Maybe you just didn't inquire about that.
>
> Prosecutor: Remember, Judge, we're talking about the state's right to pick and choose as far as people and the answers that they give or the lack thereof. I'm not saying that [S.M.] didn't respond to your questions because it didn't trigger anything and everything else. In my opinion, maybe he wasn't forthcoming. And I said there were other people that didn't respond as well. But in addition to that, when I asked him the specific question, he was the first one that said that. And I asked him, you know, when you talk about what evidence, he never said anything else. He just said, well, I can't believe the he said she said thing. Then he went on to say something else. He said I just want, you know, I can't send somebody, he didn't say jail, but I just can't find somebody guilty over the he said she said thing. In my mind that's going a little further than what some of the other people said. That was the distinction between [S.M.] and the three other people that said that. Nobody else said that. And I don't think he was forthcoming. That's how I saw that.

(Tr. 98-100.)

The district court judge then concluded:

What we have different in this particular case, Mr. Dees [the prosecutor] pointed out for the record, Mr. Dees is African American. But we also have a minority judge. Both of whom are sensitive to these issues. For me to reach a conclusion that Mr. Dees has not properly exercised a peremptory challenge I would have to conclude that he's involved in purposeful discrimination. Which I just don't think that that's the case given what I have seen in this case and what I have seen in other cases by Mr. Dees. So [S.M.'s] answers were such that I think it would be, I can understand there would be legitimate concern based on the way he responded to the questions. And even though my preference would have been to have minorities on this jury, including African Americans, the fact that they're minorities doesn't necessarily mean that they automatically have a right to stay regardless of how they answer the questions. And [S.M.]'s answers triggered, at least in my mind, a concern that Mr.

> Dees would have to exercise a peremptory in this matter. So I do find that Mr. Dees has articulated a race-neutral explanation for the peremptory challenge. And that the defendant has not given the circumstances I've mentioned, proven purposeful discrimination in the exercise of his peremptory.

(Tr. 104.) The district court judge overruled the challenge and allowed the prosecutor to strike S.M. from the venire. The Minnesota Court of Appeals upheld the trial court's ruling on the peremptory challenge, and the Minnesota Supreme Court summarily denied Petitioner's petition for review.

This Court has reviewed the record in this case and concludes that it was not unreasonable for the trial court judge to credit the prosecutor's race-neutral explanations for striking S.M. from the venire. As stated above, state court factual findings are presumed to be correct and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. *Collins*, 126 S.Ct. at 974 (quoting 28 U.S.C. § 2254(e)(1). Petitioner has not met his burden in the present case.

The prosecutor stated that he moved to strike S.M. from the jury because, in the prosecutor's opinion "maybe he wasn't forthcoming." (Tr. 98.) In addition, the prosecutor noted that, when he asked S.M. to elaborate on what he meant when he said he needed "evidence", S.M. did not offer any explanation as to what "evidence" he would look to in order to resolve a conflict in a "he said, she said" situation. The prosecutor further noted that S.M. said that he could not find someone guilty if there was no other evidence but "he said, she said" evidence.

In the present case, Petitioner has not met his burden of rebutting the presumption that the trial court's findings were correct. The State's case against Petitioner focused squarely on an alleged assault that was only witnessed by the victim and Petitioner. *Collins*, 2006 WL 3409167 * 3. The State had very good reason to believe that the victim would be uncooperative, as the State had to subpoena the victim to secure her testimony. *Id*. The State knew that the victim had a history of protecting Petitioner after he allegedly abused her, and could expect the same behavior from the

victim at trial. *Id*. In such a situation, it was not unreasonable for the trial court to credit the prosecutor's race-neutral reasons for exercising a peremptory challenge against S.M. As stated by the United States Supreme Court, while "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility . . . on habeas review that does not suffice to supersede the trial court's credibility determination." *Collins*, 126 S.Ct. at 976. Therefore, the Court recommends that Petitioner's *Batson* challenge in his habeas petition be denied.

      **B.**     **Petitioner's Remaining Claims Are Procedurally Defaulted; Therefore, this Court Will Not Reach the Merits of Those Claims.**

To reach the merits of a habeas corpus petition, a federal court "must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). This requirement is not satisfied unless the habeas petitioner has raised all of his claims at every available level of the state court appellate process. *O'Sullivan*, 526 U.S. at 845; *Ashker*, 5 F.3d at 1179. The Eighth Circuit noted that "[i]n order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall*, 114 F.3d at 757. (internal citations omitted). The United States Supreme Court held that

> ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The *Baldwin* Court noted that courts with discretionary review powers "have heavy workloads, which would be significantly increased if their judges had to read through lower court opinions or briefs in every instance." *Id*. at 31-32.

If a habeas corpus petition contains claims that have not been fairly presented to the state courts, the reviewing federal court "must then determine whether the petitioner has complied with state procedural rules governing post-conviction proceedings, i.e., whether a state court would accord the petitioner a hearing on the merits." *McCall*, 114 F.3d at 757.  In the event that

> state procedural rules prevent the petitioner from obtaining such a hearing, then the petitioner is also procedurally barred from obtaining habeas relief in a federal court unless he can demonstrate either cause and actual prejudice, or that a miscarriage of justice will occur if [the court does] . . . not review the merits of the petition.

*Id*.  If a state procedure presently exists for the determination of the merits of a claim that has not been fairly presented, that claim is said to be unexhausted.  If a state procedure does not presently exist for the determination of the merits of a claim, that claim is said to be procedurally defaulted.  In other words,

> [a] state prisoner procedurally defaults a claim when he violates a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court . . . a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards.

*Clemons v. Leubbers*, 381 F.3d 744, 750 (8th Cir. 2004).  The relevant question then becomes "whether there is, under the law of [Minnesota], any presently available state procedure for the determination of the merit of th[ese] claim[s]." *Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir. 1980).

Under Minnesota state law, "once a petitioner has directly appealed a conviction, all matters raised in that appeal, and all matters that were known but not raised, 'will not be considered upon a subsequent petition for post-conviction relief.' " *Greer v. State*, 673 N.W.2d 151, 155 (Minn. 2004) (quoting *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn.1976)); *see also McCall,* 114 F.3d at

757 (8th Cir.1997). There are two exceptions to this general rule:

> First, a postconviction court may hear and consider a claim that was previously known but not raised if the claim is so novel that its legal basis was not reasonably available at the time of the direct appeal . . . Second, even if the claim contained in a petition for postconviction relief was known at the time of direct appeal or its legal basis was reasonably available, we still allow substantive review of the claim when fairness so requires and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal.

*Greer*, 673 N.W.2d at 155 (citations and quotations omitted).

"When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). As noted by the United State Supreme Court,

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In his Petition for Review to the Minnesota Supreme Court, Petitioner purported to present two issues for review. The first issue, the *Batson* issue discussed above, was fairly presented and argued to the Minnesota Supreme Court. The second issue, whether Petitioner was properly impeached at trial with evidence of his conviction for fifth-degree possession, was not fairly presented to the Minnesota Supreme Court for review.

Although section III of Petitioner's petition for review to the Minnesota Supreme Court states that the impeachment issue is a legal issue presented for review, the petition for review does not contain any legal argument regarding the impeachment issue. (Docket Number 10, Ex. 10 at 1.) Other than noting the existence of the impeachment issue in the petition for review, and relating the

-14-

facts that the trial court determined that Petitioner could be impeached with the conviction and that the Minnesota Court of Appeals affirmed this decision, Petitioner failed to present any legal argument regarding the impeachment issue. (Docket Number 10, Ex. 10 at 1-2; 4.) As stated above, "[i]n order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall*, 114 F.3d at 757. (internal citations omitted). Petitioner failed to do so and, in fact, failed to cite to any relevant case law in regard to the impeachment issue in his petition for review to the Minnesota Supreme Court.

While Petitioner attached all of his lower court appellate briefs to his petition for review, as stated by the United States Supreme Court, "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond the petition or a brief that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32. Since Petitioner failed to fairly present the impeachment issue to the Minnesota Supreme Court, and since this matter was raised in his appeal to the Minnesota Court of Appeals, this issue will not be considered upon a subsequent petition for post-conviction relief; therefore, as a matter of Minnesota law, this issue is procedurally defaulted. *See Greer v. State*, 673 N.W.2d 151, 155 (Minn. 2004) (quoting *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn.1976)); *see also McCall,* 114 F.3d at 757 (8th Cir.1997).

Petitioner's claim was a matter known but not raised in his petition for review. This claim was not "so novel that [its] legal basis was not reasonably available at the time of the direct appeal." *Greer*, 673 N.W.2d at 155 (citations and quotations omitted). Substantive review of Petitioner's

claim is not permitted under Minnesota law because he raised this issue to the Minnesota Court of Appeals but he "deliberately and inexcusably" failed to raise these issues on appeal to the Minnesota Supreme Court. *Id*. Therefore, as these two exceptions do not apply to Petitioner, his failure to present his impeachment claim has effectively barred him from raising that claim again in a collateral state court action. *Id*. Accordingly, this claim is procedurally defaulted pursuant to Minnesota law, as Petitioner cannot raise these claims in a subsequent petition for postconviction relief. Petitioner has not argued or demonstrated cause for failing to properly pursue his claims in his appeal to the Minnesota Supreme Court. Nor has he made any contention or showing of actual innocence necessary to invoke the fundamental miscarriage of justice exception. *See McCall v. Benson,* 114 F.3d 754, 758 (8th Cir.1997). Accordingly, federal habeas review of Petitioner's impeachment claim is procedurally barred, and this Court cannot review that claim.

As stated above, Petitioner's petition for review to the Minnesota Supreme Court listed two legal issues, the *Batson* issue and the impeachment issue, and only the *Batson* issue was fairly presented in the petition. Therefore, the two remaining issues[2] in the present petition for a writ of habeas corpus were not fairly presented to the state courts for review. Petitioner's petition for review to the Minnesota Supreme Court did not even mention these issues, let alone advance any legal argument in support of these issues. In his *pro se* supplemental brief to the Minnesota Court of Appeals, Petitioner argued that "[t]he evidence as presented at trial by the state if [sic] insufficient to prove guilt beyond a reasonable doubt requiring reversal and dismissal with prejudice for the violations of Appellant's rights under the Fifth, Sixth and Fourteenth Amendments." (Docket

---

[2] The two remaining issues in the present petition are (1) that the evidence adduced at trial is insufficient to support Petitioner's conviction and (2) that the trial court violated Petitioner's Fifth, Sixth and Fourteenth Amendment rights.

Number 10. Petitioner's *Pro Se* Supplemental Brief at i.) In his petition for review to the Minnesota Supreme Court, Petitioner failed to include the above two arguments. Thus, Petitioner's claims were matters known but not raised in his petition for review. These claims were not "so novel that [their] legal basis was not reasonably available at the time of the direct appeal." *Greer*, 673 N.W.2d at 155 (citations and quotations omitted). Likewise, substantive review of Petitioner's claims is not permitted because he raised these issues to the Minnesota Court of Appeals but he "deliberately and inexcusably" failed to raise these issues on appeal to the Minnesota Supreme Court. *Id*. Therefore, as these two exceptions do not apply to Petitioner, his failure to present these claims to the Minnesota Supreme Court has effectively barred him from raising them again in a collateral state court action. *Id*. Accordingly, these claims are procedurally defaulted pursuant to Minnesota law, as Petitioner cannot raise these claims in a subsequent petition for postconviction relief. Petitioner has not argued or demonstrated cause for failing to properly pursue his claims in his appeal to the Minnesota Supreme Court. Petitioner has not made any contention or showing of actual innocence necessary to invoke the fundamental miscarriage of justice exception. *See McCall v. Benson,* 114 F.3d 754, 758 (8th Cir.1997). Accordingly, federal habeas review of Petitioner's remaining claims is procedurally barred, and this Court cannot review those claims.

### III.  RECOMMENDATION

Based on all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [#1] be **DISMISSED WITH PREJUDICE**.

DATED: July 6, 2007                                    s/ *Franklin L. Noel*
                                                                        FRANKLIN L. NOEL
                                                                        United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 25, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.